CORRECTED

Form 1        NATIONAL RAILROAD ADJUSTMENT BOARD
FIRST DIVISION

Award No. 28224
Docket No. 48103
16-1-NRAB-00001-140124

The First Division consisted of the regular members and in addition Referee Lisa Salkovitz Kohn when award was rendered.

(United Transportation Union
**PARTIES TO DISPUTE:**  (
(CSX Transportation, Inc. (Former Baltimore &
( Ohio Railroad Company)

**STATEMENT OF CLAIM:**

"Reference to, File number 248017. Appeal claim of Foreman, J. A. Habel, ID XXXXXXX, for two (2) days overhead for a period of six months, that his record be cleared of the event, and he be compensated for all lost earnings including pay for attending the investigation and wage equivalent of fringe benefits, including health and welfare expenses, in accord with Rule 17 of the governing agreement."

**FINDINGS:**

The First Division of the Adjustment Board, upon the whole record and all the evidence, finds that:

The carrier or carriers and the employee or employees involved in this dispute are respectively carrier and employee within the meaning of the Railway Labor Act, as approved June 21, 1934.

This Division of the Adjustment Board has jurisdiction over the dispute involved herein.

Parties to said dispute were given due notice of hearing thereon.



Form 1                                                             Award No. 28224
Page 2                                                             Docket No. 48103
                                                               16-1-NRAB-00001-140124

     By letter dated January 15, 2013, the Claimant was instructed to attend an Investigation with the stated purpose:

> ". . . to develop the facts and place your responsibility, if any, in connection with information received on January 15, 2013, that you did not meet the minimum availability requirements as outlined in System Notice 108, originally issued on July 30, 2010 and any subsequent minimum availability re-issue notices, for the period of December 17, 2012 through January 13, 2013, and all circumstances relating thereto."

     The formal Investigation was held on January 29, 2013. By letter dated February 28, 2013, the Claimant was notified that the Carrier had found him culpable for violation of CSX Transportation Bulletins & Notices, System Notice 108, originally issued on July 30, 2010 and Re-issue Notice 100 effective June 26, 2012, and assessed him two days overhead for a period of six months.  The Organization filed a timely appeal, and the matter was appealed up to and including the highest designated officer of the Carrier, whereupon the dispute was duly submitted to the First Division for resolution.

     The record reflects that the Claimant was displaced from his previous assignment by a senior employee on January 8, 2013 at 1614 (CSX time).  He was notified of his displaced status via the internet on January 9, 2013, at 0205, and exercised his seniority to another assignment on January 10, 2013 at 2359 - 45 hours and 54 minutes after notification.  The Claimant could have exercised his seniority sooner, because junior employees were working throughout the period that he was displaced.  The Carrier classified the Claimant as unavailable for the entire time he was displaced for minimum availability purposes, reasoning that work had been available to him but he chose to forgo that work pending exercise of his seniority to the new assignment he ultimately took at the end of the day on January 10.  The Carrier concluded that the Claimant failed to meet the minimum availability standard of System Notice 108 based on this determination, and asserts that the Claimant was properly assessed a two-day overhead suspension for a period of six months pursuant to that policy.

     The Organization objects that the Carrier violated the Claimant's rights under B&O Rule 8(d)(2) and Article XII (Displacement) of the 1996 UTU National

Form 1                                                    Award No. 28224
Page 3                                                    Docket No. 48103
                                                   16-1-NRAB-00001-140124

Agreement, to take up to 48 hours after proper notification of displacement to exercise his seniority rights to a new assignment.[1]  At no time was he voluntarily unavailable. The Claimant exercised his rights within the period specified by Article XII, the Organization observes, and therefore cannot be penalized for being "unavailable" during that time.  Employees may make their displacement choices based on a variety of factors, such as earnings, board standing, on-duty times, off-duty days, on-duty location and potential co-workers.  They are entitled to take up to 48 hours to consider their alternatives and make that choice, and should not be penalized for doing so.  In holding the Claimant (and other employees) in violation of the availability policy merely for invoking their contractual right to take up to 48 hours to exercise their displacement rights, the Carrier is attempting to promulgate a material change to UTU Agreement Rules on the property represented by the UTU B&O General Committee, the Organization contends.

According to the Organization, this effort by the Carrier follows and is the result of failed voluntary negotiations over the Electronic Bid System (EBS), which might have eliminated mid-week seniority moves and displacement on this property;

_____
[1] B&O Rule 8(d)(2) states:
> Road or yard men who have displacement rights and can hold a turn at the terminal where displacement occurred must either exercise their displacement rights or obtain a leave of absence within thirty (30) days or their service record will be marked VUA (Voluntary Unexplained Absence.)

In relevant part, Section 1 of Article XII states:

> (a) Where agreements that provide for the exercise of displacement rights within a shorter time period are not in effect, existing rules, excluding crew consist agreements, are amended to provide that an employee who has a displacement right on any position (including extra boards) within a terminal or within 30 miles of such employee's current reporting point, whichever is greater, must, from the time of proper notification under the applicable agreement or practice, exercise that displacement right within forty-eight (48) hours.

> (b) Failure of an employee to exercise displacement rights, as provided in (a) above, will result in said employee being assigned to the applicable extra board, seniority permitting . . . .

Form 1                                                               Award No. 28224
Page 4                                                               Docket No. 48103
                                                                16-1-NRAB-00001-140124

the Carrier is attempting to accomplish a similar result by unilaterally imposing a policy that it could not gain through negotiation.

The Organization also notes that while the Carrier has previously disciplined employees failing to meet the Carrier's availability standard due to a combination of sick mark-offs or mark-offs for some other non-contractual reason, as well as being in displaced status during the availability period, this and the trailing cases (First Division Awards 28225 through 28233) are the first cases to be adjudicated where an employee on this property has been disciplined based **solely** on contractually-entitled displacement time under UTU 1996 National Agreement Article XII.

Citing the negotiated Q & As pertaining to Article XII, the Organization notes that the Parties specifically agreed that discipline shall **not** result if an employee fails to exercise seniority rights within the 48-hour period; instead the employee is merely assigned to an extra board.[2]  The Organization also cites the July 28, 2000 letter of CSXT Director Labor Relations R. D. Hiel to UTU General Chairman J. T. Reed, wherein Director Hiel stated:

"It is clear that the intention of Article XII was to make the employee responsible for exercising his displacement rights within 48 hours; and subjecting him to sanctions in the event that he chose **not** to do so . . . .

---

[2] The relevant Q&As are Nos. 3 and 7:

Q-3: How is an employee covered by this Article handled who fails to exercise seniority placement within 48 hours?
A-3: Such employee is assigned to the applicable extra board, seniority permitting, pursuant to Section l (b) and subsequently governed by existing rules and/or practices.
* * * * *

(Cont'd next page)
Q-7: Is it the intent of Article XII to impose discipline on employees who fail to exercise seniority within 48 hours?
A-7: No, Section 1(b) provides that in these circumstances the employee will be assigned to the applicable extra board, seniority permitting. The employee will then be subject to existing rules and practices governing service on such extra board.

Form 1                                                        Award No. 28224
Page 5                                                        Docket No. 48103
                                                        16-1-NRAB-00001-140124

> Commencing on [September 1, 2000], should an employee choose not to exercise his displacement rights within 48 hours, he may immediately be 'assigned' to any open position that exists at the supply point where displaced (or protected by the supply point) upon proper notification by CMC.[3]  (emphasis added)

In addition, the Organization observes, Section 10 of Rule 64 of the Schedule Agreement provides:

> "A trainman who has displacement rights but has not placed himself will not be used to fill a vacancy except in an emergency or when no other employee is available."  (emphasis added)

The Organization also notes that after issuing its Simplified Availability Policy in System Notice No. 108, the Carrier specifically informed the Organization that displacement rights would continue to be respected under the Policy.[4]

The Organization concludes that this history and these Agreements demonstrate that the Carrier's decision to treat an employee's contractually-authorized displacement time of up to 48 hours as a violation of the Availability Policy

---

[3] The purpose of the July 28, 2000 letter was to remove the previous option of an employee to delay exercising his displacement right beyond 48 hours if he intended to exercise seniority beyond 30 miles from his last reporting point if an open position existed at his home supply point.  Thereafter, if such a position existed and the employee failed to exercise his seniority within 48 hours, the Carrier could assign the employee to any such open position.

[4] That assurance came in an undated letter from AVP Labor Relations David Ingoldsby and AVP Crew Management Thomas Flanley to UTU General Chairperson Lesniewski and other Organization officers, in response to a letter from Lesniewski dated November 12, 2010, asking the Carrier to respond to 22 questions about the Carrier's intended application of the Availability Policy issued July 30, 2010.  Ingoldsby and Flanley restated Question 3 and answered as follows:

> Q3 – Will the revised standards violate schedule agreement displacement rules?
> A3 – No.  Contractual displacement rules will be respected.

Form 1
Page 6

Award No. 28224
Docket No. 48103
16-1-NRAB-00001-140124

violates the applicable UTU Agreement Rules, and that the discipline imposed on the Claimant for his exercise of his displacement rights cannot be sustained.  A variety of arbitral authority is cited in its Submission to support the claim.

The Carrier responds that the Claimant made himself unavailable for work on two days during the review period, even though work was available to him, and thereby violated his fundamental duty to be available for work. The Carrier has a long-recognized prerogative to set guidelines on attendance to balance the manpower needs of its operations and the employees' needs and desires for quality time off, and the Availability Policy pursuant to which the Claimant was disciplined has repeatedly been upheld as an appropriate exercise of its managerial discretion in this regard.  The Carrier further notes that Arbitrators have repeatedly found that an employee's choice to delay exercising seniority after displacement, even though work was available, can be counted appropriately as time unavailable, when applying an availability standard.  Neither Article XII of the UTU National Agreement, nor Rule 64 of the Schedule Agreement restricts the Carrier's right to adopt an attendance policy; Section 2 of Article XII states that the Article ". . . is not intended to restrict any of the existing rights of a carrier."

The Carrier also asserts that arbitral precedent cannot be ignored merely because the Claimant's unavailability here consisted exclusively of displacement time. Arbitrators have addressed displacement time as time unavailable independent of sick time even when both sick time and displacement were the basis for discipline. Moreover, the Carrier reasons, Article XII, Q&A 7 to Article XII, and Rule 64 say nothing that relieves the Claimant from his duty to be available for work.  Nothing in the Agreements creating the 48-hour period for exercising seniority to another assignment also created the right to be unavailable for work during that period.  Finally, the Carrier contends that the Claimant's responsibility for failing to meet the availability standard in the Policy is not mitigated by the Organization's representation that the Claimant would have accepted a call for work had he received one.  Because the negotiated decision tables for calling employees assigned to pools or extra boards or regularly scheduled jobs exclude employees in displaced status, employees in such status know that they are shielded from penalty for missing a call for work.  The Carrier accordingly urges that the claim be denied.

Form 1                                                                     Award No. 28224
Page 7                                                                     Docket No. 48103
                                                                           16-1-NRAB-00001-140124

The Board considered the record in full, including the Parties' Submissions, arguments, and authorities, which are summarized only briefly above. After due consideration, we find that the claim must be denied. The Carrier has established that there was substantial evidence to support its determination of the Claimant's culpability under its Availability Policy, that this application of the Availability Policy does not violate the Parties' Agreements, and that the quantum of discipline assessed is appropriate under all the circumstances.

It is well-established that as part of its right to adopt guidelines to promote safe and efficient business operations, the Carrier has the right to promulgate, implement and enforce Rules and Policies governing employee attendance. See, e.g., Third Division Award 36544 (Kenis); Public Law Board No. 6610, Award 4 (Goldstein). Nonetheless, that right is not unlimited. The Rules established cannot be inconsistent with law or applicable collective bargaining agreements. See, Third Division Award 36544. ("[T]here is a long line of precedent Awards in this industry which have recognized that the Carrier may establish reasonable policies with respect to employee attendance, <u>so long as the policies do not conflict with the provisions of the Agreement</u>.")  (emphasis added)

The Carrier also asserts that Arbitrators have repeatedly rejected the Organization's position that the Schedule Agreement excludes employees from being deemed unavailable during the 48-hour displacement period. In Public Law Board No. 7040, Awards 24 and 26, Neutral Wallin specifically held that delay time in exercising seniority could be counted against an employee's availability for work under the Carrier's Attendance Policy. See also Public Law Board No. 7180, Award 2 (Wallin) ("On the merits, the record established that Claimant's sick day and day in displacement status caused him to fail to meet the applicable attendance standard. There were three junior employees he could have displaced immediately to avoid being counted as unavailable under the attendance policy.")  Indeed, in Public Law Board No. 6753, Award 27, Neutral Binau observed, under Article XII of the 1996 UTU National Agreement:

"The Organization argued that the claimant was utilizing time to place himself after being bumped. While the agreement does allow the claimant time to place himself, it does not allow the claimant to use it as a vehicle to avoid work."

Form 1                                                    Award No. 28224
Page 8                                                    Docket No. 48103
                                                     16-1-NRAB-00001-140124


   In Public Law Board No. 6823, Award 36, Neutral Ross was explicit about the relationship between the right to displace and the obligation to be available for work:

> "As the Carrier argued, 'negotiated limitations on time in displaced status have no connection with employee accountability for attendance.' The Board thus concurs with the Carrier's position that employees who fail to make themselves available by delaying their exercises of seniority when junior employees are available for displacement may subject themselves to scrutiny under the Availability Policy."

   More significantly, on this property, Neutral Wallin observed, in Public Law Board No. 7180, Award 1, upholding the Carrier's position:

> ". . . The fact that he had reasons for his seven days of unavailability during the review period does not turn that unavailability into credit days.  Having reasons merely prevents claimant from being charged for absence without a proper reason.  Similar logic applied to claimant's unavailability due to being displaced.  While it is true the Agreement permits up to 48 hours for the purpose of exercising seniority without losing exercise rights, it does not excuse voluntary unavailability for attendance purposes.  If a displaced employee can immediately exercise seniority against a junior employee to avoid losing work time, the employee makes himself voluntarily unavailable for attendance purposes if he chooses to delay his exercise of seniority."

   The Organization objects that none of these decisions, nor others cited by the Carrier, control the decision in the instant case, either because different Organizations, Properties, or Agreements were involved, or because the Awards fail to demonstrate consideration of the relevant Agreements, or because the discipline under review was for a combination of displacement time and sick mark-offs or other time off, so that no Award has squarely addressed the interplay between the Availability Policy, on the one hand, and Article XII of the 1996 National Agreement, the Q&As to Article XII, or Rule 64 of the B&O Collective Bargaining Agreement.

Form 1                                                    Award No. 28224
Page 9                                                    Docket No. 48103
                                                    16-1-NRAB-00001-140124

However, a return to these underlying Agreements leads to the same conclusion as that of the Awards referred to above.  We see that Section 1(a) of Article XII does not merely create or modify a right; it imposes an obligation on "an employee who has a displacement right . . . ."  That employee "must, from the time of proper notification under the applicable agreement or practice, exercise that displacement right within forty-eight (48) hours."  Section 1(b) then provides that if the employee fails to exercise that displacement right within 48 hours, the employee will be assigned to the applicable extra board, seniority permitting.  Thus, Section 1 of Article XII addresses only what happens after 48 hours if the employee has failed to exercise seniority to his next assignment during that time.  Section 1 says nothing about the implications of delaying his selection, and thereby making himself unavailable, while work is otherwise available to him.

Indeed, as the Carrier observes, Section 2 of Article XII states that the Article "is not intended to restrict any of the existing rights of a carrier," and thus the new procedure of Section 1 did not reduce the Carrier's long-standing right to discipline employees who fail to maintain appropriate attendance levels.  The Organization objects that the "existing rights" referred to must be read in light of the employees' prior right to take up to 30 days to exercise their seniority when displaced.  But while the Organization asserts that the Carrier lacked the right to discipline for attendance violations under the prior displacement provisions, no authority has been cited.  Upon a close reading of the history of these provisions, the Board concludes that it is the Carrier's interpretation that was intended – Article XII does not alter the Carrier's generally accepted right to promulgate, implement and enforce attendance guidelines that do not conflict with law or collective bargaining agreements.

The Organization also cites Q&A 7 pertaining to Article XII in support of the claim.  The wording of the question and answer is critical:

"Q 7.  Is it the intent of Article XII to impose discipline on employees who fail to exercise seniority within 48 hours?

A 7. No, Section 1(b) provides that in these circumstances the employee will be assigned to the applicable extra board, seniority permitting . . . ."

Form 1                                                    Award No. 28224
Page 10                                                   Docket No. 48103
                                                          16-1-NRAB-00001-140124

        The Organization asserts from this that ". . . the framers were explicit in that
the reduction of displacement time from thirty (30) days to forty-eight (48) hours was
not intended to impose disciplinary sanctions upon an employee failing to exercise
seniority to a new position within forty-eight (48) hours; let alone less than forty-eight
(48) hours." However, this goes too far.  The Parties did not grant blanket immunity
from discipline to employees being displaced.  From the history of Article XII and the
change in the displacement procedure it represents, it is clear that the Parties' concern
in framing the question and answer was the adjustment that employees would be
required to make from a maximum of 30 days, to a maximum of 48 hours, to exercise
seniority.  The Q&A clarifies that if those employees failed to exercise seniority fast
enough, they would not be disciplined; they would merely be assigned to an extra
board.  The Organization failed to demonstrate that the Parties intended in
formulating this Q&A to immunize employees from discipline for availability or
attendance issues.

        The Organization also contends that the Carrier violated the premise of
paragraph 10 of Rule 64 of the 1994 CSXT and UTU B&O Agreement by considering
the Claimant to be unavailable to work during his displacement time.  Under Rule 64
(10), "A trainman who has displacement rights but has not placed himself will not be
used to fill a vacancy except in an emergency or when no other employee is
available."  However, Rule 64 sets out the Rules whereby "[e]mployees working
within their prior right and/or consolidated seniority districts in road freight, yard
and passenger service will be permitted to exercise seniority by displacing any
junior employee within their prior right and/or consolidated seniority district . . . ."
Thus, Rule 64 does not address the 48-hour displacement Rule of Article XII.  The
Organization failed to show on this record how the discipline of the Claimant in this
case violated any rights he might have under paragraph 10 of Rule 64.

        Finally, the Organization contends that the Carrier cannot contend that the
Claimant was "unavailable" because he was placed in the displaced status
involuntarily; he never voluntarily marked himself off as unavailable either during the
displacement period or during the entire period of review cited in the charge letter; he
was never called for duty on the dates in question, but would have performed service if
needed.  According to the Organization, the Claimant's status was always a matter of
Contract operation rather than voluntary action on his part.  However, the record
reflects that there were junior employees working throughout the displacement period

Form 1                                                        Award No. 28224
Page 11                                                       Docket No. 48103
                                                             16-1-NRAB-00001-140124

whose jobs the Claimant could have taken by exercise of his seniority in less than 45
hours and 54 minutes from notification of displacement.  Thus, although the Claimant
was displaced involuntarily, there is substantial evidence that he remained in that
status for almost 46 hours through his own choice.[5]

        In sum, the Carrier presented substantial evidence to show that the Claimant
was unavailable for work on two days out of the review period and that the discipline
assessed was warranted pursuant to the minimum availability guidelines of System
Notice 108, originally issued on July 30, 2010, and Re-issue Notice 100 effective June
26, 2012.  The Board finds that this application of the minimum availability guidelines
is not barred by Article XII of the 1996 UTU-CSXT (B&O) Agreement, or any other
Agreement between the Carrier and the Organization.


                                    **AWARD**

        Claim denied.


                                    **ORDER**

        This Board, after consideration of the dispute identified above, hereby orders
that an Award favorable to the Claimant(s) not be made.


                            NATIONAL RAILROAD ADJUSTMENT BOARD
                            By Order of First Division


Dated at Chicago, Illinois, this 26th day of April 2016.

---

[5] The Organization cites a number of circumstances listed in Rule 64 where junior
employees cannot be bumped by displaced employees; however, there is no evidence that
any of these were applicable while the Claimant was displaced.

Form 1            **NATIONAL RAILROAD ADJUSTMENT BOARD**
**FIRST DIVISION**

> **Award No. 28225**
> **Docket No. 48104**
> **16-1-NRAB-00001-140125**

The First Division consisted of the regular members and in addition Referee Lisa Salkovitz Kohn when award was rendered.

           (United Transportation Union

**PARTIES TO DISPUTE:** (

           (CSX Transportation, Inc. (Former Baltimore &
           (  Ohio Railroad Company)

**STATEMENT OF CLAIM:**

> "Reference to, File number 246624. Appeal claim of Conductor, D, D, Lyon, ID XXXXXXX, for two (2) days overhead for a period of six months, that his record be cleared of the event, and he be compensated for all lost earnings including pay for attending the investigation and wage equivalent of fringe benefits, including health and welfare expenses, in accord with Rule 17 of the governing agreement."

**FINDINGS:**

The First Division of the Adjustment Board, upon the whole record and all the evidence, finds that:

The carrier or carriers and the employee or employees involved in this dispute are respectively carrier and employee within the meaning of the Railway Labor Act, as approved June 21, 1934.

This Division of the Adjustment Board has jurisdiction over the dispute involved herein.

Parties to said dispute were given due notice of hearing thereon.

By letter dated December 19, 2012, the Claimant was instructed to attend an Investigation with the stated purpose:

Form 1                                                          Award No. 28225
Page 2                                                          Docket No. 48104
                                                        16-1-NRAB-00001-140125

"... to develop the facts and place your responsibility, if any, in connection with information received on December 19, 2012, that you did not meet the minimum availability requirements as outlined in System Notice 108, originally issued on July 30, 2010 and any subsequent minimum availability re-issue notices, for the period November 19, 2012 through December 19, 2012, and all circumstances relating thereto."

The formal Investigation was held on February 14, 2013.  By letter dated March 14, 2013, the Claimant was notified that the Carrier had found him culpable for violation of CSX Transportation System Bulletin/Notice 108 dated July 30, 2010, and Reissue Bulletin & Notice 100 dated October 1, 2012, and assessed him two days overhead for a period of six months.  The Organization filed a timely appeal, and the matter was appealed up to and including the highest designated officer of the Carrier, whereupon the dispute was duly submitted to the First Division for resolution.

The record reflects that the Claimant was displaced by a senior employee on December 14, 2012 at 1429 (CSX time).  After three attempts, the Claimant was notified on December 14, 2012 at 1647 hours (CSX time).  The Claimant did not exercise his seniority until December 16, 2012 at 1637 hours (CSX time).  On December 15, 2012 at 0020 hours (CSX time), two junior employees were working whom the Claimant could have bumped, and there were an additional four open turns available on the INIWEX007 Extra Board.  On December 16, 2012, one junior employee was working, and there were six open turns on the INIW Conductor's Extra Board at 0020 hours (CSX time).  The Carrier classified the Claimant as unavailable for December 15 and 16, 2012 for minimum availability purposes, reasoning that work had been available to him but he chose to forgo that work pending exercise of his seniority to the new assignment he ultimately took on December 16 at 1637 (CSX time).  The Carrier concluded that the Claimant failed to meet the minimum availability standard of System Notice 108 based on this determination, and asserts that the Claimant was properly assessed a two-day overhead suspension for a period of six months pursuant to that Policy.

The Organization's objections in the instant case, as well as the Carrier's responses, and their respective Submissions and authorities, are essentially identical to those presented to the Board in First Division Award 28224.  Inasmuch as they have

Form 1                                                                                Award No. 28225
Page 3                                                                                Docket No. 48104
                                                                                16-1-NRAB-00001-140125

been exhaustively set forth and addressed in detail in that Award, they are incorporated herein by reference for the sake of brevity.  That being said, the Board notes that the instant case record contains substantial evidence that there were junior employees working throughout the period of the Claimant's displacement whose jobs the Claimant could have taken by exercise of his seniority in less than 47 hours and 50 minutes from notification of displacement.  Thus, although the Claimant was displaced involuntarily, there is substantial evidence that he remained in that status for almost 48 hours through his own choice.

In sum, the Carrier presented substantial evidence to show that the Claimant was unavailable for work on two days out of the review period and that the discipline assessed was warranted pursuant to the minimum availability guidelines of System Notice 108, originally issued on July 30, 2010, and Reissue Bulletin & Notice 100 dated October 1, 2012.  For the reasons set forth in First Division Award 28224, the Board finds that this application of the minimum availability guidelines is not barred by Article XII of the 1996 UTU-CSXT (B&O) Agreement, or any other Agreement between the Carrier and the Organization.

<u>AWARD</u>

Claim denied.

<u>ORDER</u>

This Board, after consideration of the dispute identified above, hereby orders that an Award favorable to the Claimant(s) not be made.

NATIONAL RAILROAD ADJUSTMENT BOARD
By Order of First Division

Dated at Chicago, Illinois, this 26th day of April 2016.

Form 1                  **NATIONAL RAILROAD ADJUSTMENT BOARD**
                                           **FIRST DIVISION**

                                                     **Award No. 28226**
                                                     **Docket No. 48105**
                                       **16-1-NRAB-00001-140126**

         **The First Division consisted of the regular members and in addition Referee Lisa Salkovitz Kohn when award was rendered.**

                             **(United Transportation Union**
**PARTIES TO DISPUTE**: **(**
                             **(CSX Transportation, Inc. (Former Baltimore &**
                             **(  Ohio Railroad Company)**

**STATEMENT OF CLAIM**:

         **"Reference to, File number 240686. Appeal claim of Foreman, A. P. Barnette, ID XXXXXXX, for two (2) days overhead for a period of six months, that his record be cleared of the event, and he be compensated for all lost earnings including pay for attending the investigation and wage equivalent of fringe benefits, including health and welfare expenses, in accord with Rule 17 of the governing agreement."**

**FINDINGS**:

         **The First Division of the Adjustment Board, upon the whole record and all the evidence, finds that:**

         **The carrier or carriers and the employee or employees involved in this dispute are respectively carrier and employee within the meaning of the Railway Labor Act, as approved June 21, 1934.**

         **This Division of the Adjustment Board has jurisdiction over the dispute involved herein.**

         **Parties to said dispute were given due notice of hearing thereon.**

         **By letter dated September 7, 2012, the Claimant was instructed to attend an Investigation with the stated purpose:**

Form 1                                                                          Award No. 28226
Page 2                                                                          Docket No. 48105
                                                                        16-1-NRAB-00001-140126

"... to develop the facts and place your responsibility, if any, in connection with information received on September 7, 2012, that you did not meet the minimum availability requirements as outlined in System Notice 108, originally issued on July 30, 2010 and any subsequent minimum availability re-issue notices, for the period August 6, 2012 through September 2, 2012, and all circumstances relating thereto."

The formal Investigation was held on September 14, 2012. By letter dated October 12, 2012, the Claimant was notified that the Carrier had found him culpable for violating the CSX Transportation Absenteeism Policy and assessed him two days overhead for a period of six months. The Organization filed a timely appeal, and the matter was appealed up to and including the highest designated officer of the Carrier, whereupon the dispute was duly submitted to the First Division for resolution.

The record reflects that the Claimant was displaced by a senior employee twice during the review period. The first time, he was displaced on August 10, 2012 at 0353 (CSX time), and he was notified that same day via IVR at 0828 hours (CSX time). The Claimant did not exercise his seniority until August 11, 2012 at 2327 hours (CSX time). The second time, the Claimant was displaced on August 31, 2012 at 0425 hours (CSX time) and notified on that same day at 1317 hours (CSX time). After apparently taking a personal leave day on September 2, 2012, the Claimant finally exercised his seniority on September 8, 2012 at 1141 hours (CSX time). Considering only the review period of August 6 through September 2, 2012, the Carrier classified the Claimant as unavailable for August 11 and September 1, 2012, reasoning that on each occasion, work had been available to him but he chose to forgo that work pending exercise of his seniority to the new assignment. The Carrier concluded that the Claimant failed to meet the minimum availability standard of System Notice 108 based on this determination, and asserts that the Claimant was properly assessed a two-day overhead suspension for a period of six months pursuant to that Policy.

The Organization's objections in the instant case, as well as the Carrier's responses, and their respective Submissions and authorities, are essentially identical to those presented to the Board in First Division Award 28224. Inasmuch as they have been exhaustively set forth and addressed in detail in that Award, they are incorporated herein by reference for the sake of brevity. That being said, the Board

Form 1                                                                                    Award No. 28226
Page 3                                                                                    Docket No. 48105
                                                                                          16-1-NRAB-00001-140126

notes that the Claimant does not dispute the Carrier's representation that there were junior employees working throughout the period of the Claimant's displacement whose jobs the Claimant could have taken by the exercise of his seniority.  Thus, although the Claimant was displaced involuntarily, there is substantial evidence that he remained in that status despite the availability of work through his own choice.

In sum, the Carrier presented substantial evidence to show that the Claimant was unavailable for work on two days out of the review period and that the discipline assessed was warranted pursuant to the minimum availability guidelines of System Notice 108, originally issued on July 30, 2010, and Reissue Bulletin & Notice 100 dated October 1, 2012.  For the reasons set forth in First Division Award 28224, the Board finds that this application of the minimum availability guidelines is not barred by Article XII of the 1996 UTU-CSXT (B&O) Agreement, or any other Agreement between the Carrier and the Organization.

## AWARD

Claim denied.

## ORDER

This Board, after consideration of the dispute identified above, hereby orders that an Award favorable to the Claimant(s) not be made.

NATIONAL RAILROAD ADJUSTMENT BOARD
By Order of First Division

Dated at Chicago, Illinois, this 26th day of April 2016.

Form 1             NATIONAL RAILROAD ADJUSTMENT BOARD
                              FIRST DIVISION

                                              Award No. 28227
                                              Docket No. 48106
                                              16-1-NRAB-00001-140127

        The First Division consisted of the regular members and in addition Referee
Lisa Salkovitz Kohn when award was rendered.

                              (United Transportation Union
PARTIES TO DISPUTE:  (
                              (CSX Transportation, Inc. (Former Baltimore &
                              (  Ohio Railroad Company)

STATEMENT OF CLAIM:

        Reference to, File number 241684.  Appeal claim of Conductor, M. T.
Foster, ID XXXXXXX, for two (2) days overhead for a period of six
months, that his record be cleared of the event, and he be compensated
for all lost earnings including pay for attending the investigation and
wage equivalent of fringe benefits, including health and welfare expenses,
in accord with Rule 17 of the governing agreement."

FINDINGS:

        The First Division of the Adjustment Board, upon the whole record and all the
evidence, finds that:

        The carrier or carriers and the employee or employees involved in this dispute
are respectively carrier and employee within the meaning of the Railway Labor Act,
as approved June 21, 1934.

        This Division of the Adjustment Board has jurisdiction over the dispute
involved herein.

        Parties to said dispute were given due notice of hearing thereon.

        By letter dated September 19, 2012, the Claimant was instructed to attend an
Investigation with the stated purpose:

Form 1                                                      Award No. 28227
Page 2                                                      Docket No. 48106
                                                       16-1-NRAB-00001-140127

". . . to develop the facts and place your responsibility, if any, in connection with information received on September 19, 2012, that you did not meet the minimum availability requirements as outlined in System Notice 108, originally issued on July 30, 2010 and any subsequent minimum availability re-issue notices, for the period August 20, 2012 through September 16, 2012, and all circumstances relating thereto."

The formal Investigation was held on October 10, 2012. By letter dated November 7, 2012, the Claimant was notified that the Carrier had found him culpable for violation of CSX Transportation System Notice 108 dated July 30, 2012, as well as Operating Rule GR-105, and assessed him two days overhead for a period of six months. The Organization filed a timely appeal, and the matter was appealed up to and including the highest designated officer of the Carrier, whereupon the dispute was duly submitted to the First Division for resolution.

The record reflects that the Claimant was displaced by a senior employee on September 8, 2012 at 0828 hours (CSX time). After six attempts, the Claimant was notified of his displaced status on that same day at 0828 hours (CSX time), but he did not exercise his seniority until September 9, 2012 at 2348 hours (CSX time). After four attempts, the Claimant was notified of his displaced status on September 15, 2012 at 2115 hours (CSX time). He did not exercise his seniority until September 16, 2012 at 2236 hours (CSX time). On both dates junior employees were working while the Claimant was displaced - 16 junior employees on September 9, 2012- and there were open turns on two extra boards on September 16, 2012. The Carrier classified the Claimant as unavailable for September 9 and September 16, 2012 for minimum availability purposes, reasoning that work had been available to him but he chose to forgo that work pending exercise of his seniority to his new assignments. The Carrier concluded that the Claimant failed to meet the minimum availability standard of System Notice 108 based on this determination, and asserts that the Claimant was properly assessed a two-day overhead suspension for a period of six months pursuant to that Policy.

The Organization's objections in the instant case, as well as the Carrier's responses, and their respective Submissions and authorities, are essentially identical to those presented to the Board in First Division Award 28224. Inasmuch as they have been exhaustively set forth and addressed in detail in that Award, they are

Form 1                                                      Award No. 28227
Page 3                                                       Docket No. 48106
                                                          16-1-NRAB-00001-140127

incorporated herein by reference for the sake of brevity.  That being said, the Board notes that the instant case record contains substantial evidence that there were junior employees working throughout the period of the Claimant's displacement whose jobs the Claimant could have taken by exercise of his seniority sooner than he did. Although the Claimant was displaced involuntarily, there is substantial evidence that he remained in that status longer than necessary through his own choice.

In sum, the Carrier presented substantial evidence to show that the Claimant was unavailable for work on two days out of the review period and that the discipline assessed was warranted pursuant to the minimum availability guidelines of System Notice 108, originally issued on July 30, 2010, and Reissue Bulletin & Notice 100 dated October 1, 2012.  For the reasons set forth in First Division Award 28224, the Board finds that this application of the minimum availability guidelines is not barred by Article XII of the 1996 UTU-CSXT (B&O) Agreement, or any other Agreement between the Carrier and the Organization.

<u>AWARD</u>

Claim denied.

<u>ORDER</u>

This Board, after consideration of the dispute identified above, hereby orders that an Award favorable to the Claimant(s) not be made.

NATIONAL RAILROAD ADJUSTMENT BOARD
By Order of First Division

Dated at Chicago, Illinois, this 26th day of April 2016.

Form 1             **NATIONAL RAILROAD ADJUSTMENT BOARD**
                                     **FIRST DIVISION**

                                             **Award No. 28228**
                                             **Docket No. 48107**
                                   **16-1-NRAB-00001-140128**

      The First Division consisted of the regular members and in addition Referee Lisa Salkovitz Kohn when award was rendered.

                              **(United Transportation Union**
**PARTIES TO DISPUTE:**    **(**
                              **(CSX Transportation, Inc. (Former Baltimore &**
                              **(    Ohio Railroad Company)**

**STATEMENT OF CLAIM:**

      "Reference to, File number 236660. Appeal claim of Conductor, B. R Burd, ID XXXXXXX, for two (2) days overhead for a period of six months, that his record be cleared of the event, and he be compensated for all lost earnings including pay for attending the investigation and wage equivalent of fringe benefits, including health and welfare expenses, in accord with Rule 17 of the governing agreement."

**FINDINGS:**

      The First Division of the Adjustment Board, upon the whole record and all the evidence, finds that:

      The carrier or carriers and the employee or employees involved in this dispute are respectively carrier and employee within the meaning of the Railway Labor Act, as approved June 21, 1934.

      This Division of the Adjustment Board has jurisdiction over the dispute involved herein.

      Parties to said dispute were given due notice of hearing thereon.

      By letter dated July 19, 2012, the Claimant was instructed to attend an Investigation with the stated purpose:

Form 1                                                          Award No. 28228
Page 2                                                          Docket No. 48107
                                                          16-1-NRAB-00001-140128

". . . to develop the facts and place your responsibility, if any, in connection with information received on July 15, 2012, that you did not meet the minimum availability requirements as outlined in System Notice 108, originally issued on July 30, 2010 and any subsequent minimum availability re-issue notices, for the period June 18, 2012 through July 15, 2012, and all circumstances relating thereto."

The formal Investigation was held on September 5, 2012. By letter dated October 5, 2012, the Claimant was notified that the Carrier had found him culpable for violation of CSX Transportation System Notice 100 dated July 1, 2012, and assessed him two days overhead for a period of six months. The Organization filed a timely appeal, and the matter was appealed up to and including the highest designated officer of the Carrier, whereupon the dispute was duly submitted to the First Division for resolution.

The record reflects that the Claimant was displaced by a senior employee on July 9, 2012 at 0916 hours (CSX time). After 82 attempts, the Claimant was notified of his displaced status on July 11, 2012 at 1109 hours (CSX time). He then exercised his seniority on the same day that he was notified at 1207 hours, bidding to a job that was observing two rest days. After observing two rest days, the Claimant was again displaced on July 12, 2012 at 1354 hours (CSX time). After 36 attempts, he was notified on July 14, 2012 at 1030 hours (CSX time). The Claimant exercised his seniority on the same day of his notification at 1048 hours (CSX time). Once again, the Claimant's exercise of seniority was to an assignment observing two rest days. On both dates junior employees were working while the Claimant was in a displaced status. On July 10, 2012, six junior employees were working, and there was an open turn available on the BAWL Conductors Extra Board. On July 13, 2012, there were 11 junior employees working, as well as one open turn on the BAWL Conductors Extra Board. The Carrier classified the Claimant as unavailable for July 10 and July 13, 2012 for minimum availability purposes, reasoning that work had been available to him but he chose to forgo that work pending exercise of his seniority to his new assignments. The Carrier concluded that the Claimant failed to meet the minimum availability standard of System Notice 108 based on this determination, and asserts that the Claimant was properly assessed a two-day overhead suspension for a period of six months pursuant to that policy.

Form 1                                                            Award No. 28228
Page 3                                                            Docket No. 48107
                                                                 16-1-NRAB-00001-140128


      The Organization's objections in the instant case, as well as the Carrier's responses, and their respective Submissions and authorities, are essentially identical to those presented to the Board in First Division Award 28224.  Inasmuch as they have been exhaustively set forth and addressed in detail in that Award, they are incorporated herein by reference for the sake of brevity.  That being the case, the Board notes that the instant case record contains substantial evidence that there were junior employees working throughout the period of the Claimant's displacement whose jobs the Claimant could have taken by the exercise of his seniority sooner than he did.  Although the Claimant was displaced involuntarily, there is substantial evidence that he remained in that status longer than necessary through his own choice.

      In sum, the Carrier presented substantial evidence to show that the Claimant was unavailable for work on two days out of the review period and that the discipline assessed was warranted pursuant to the minimum availability guidelines of System Notice 108, originally issued on July 30, 2010, and Reissue Bulletin & Notice 100 dated October 1, 2012.  For the reasons set forth in First Division Award 28224, the Board finds that this application of the minimum availability guidelines is not barred by Article XII of the 1996 UTU-CSXT (B&O) Agreement, or any other Agreement between the Carrier and the Organization.

**AWARD**

      Claim denied.

**ORDER**

      This Board, after consideration of the dispute identified above, hereby orders that an Award favorable to the Claimant(s) not be made.

**NATIONAL RAILROAD ADJUSTMENT BOARD**
**By Order of First Division**

Dated at Chicago, Illinois, this 26th day of April 2016.

Form 1                 **NATIONAL RAILROAD ADJUSTMENT BOARD**
**FIRST DIVISION**

> **Award No. 28229**
> **Docket No. 48108**
> **16-1-NRAB-00001-140129**

       The First Division consisted of the regular members and in addition Referee Lisa Salkovitz Kohn when award was rendered.

                     (United Transportation Union
**PARTIES TO DISPUTE:**    (
                     (CSX Transportation, Inc. (Former Baltimore &
                     (   Ohio Railroad Company)

**STATEMENT OF CLAIM:**

       "Reference to, File number 232571. Appeal claim of Foreman, N. L. Ingrodi, ID XXXXXXX, for two (2) days overhead for a period of six months, that his record be cleared of the event, and he be compensated for all lost earnings including pay for attending the investigation and wage equivalent of fringe benefits, including health and welfare expenses, in accord with Rule 17 of the governing agreement."

**FINDINGS:**

       The First Division of the Adjustment Board, upon the whole record and all the evidence, finds that:

       The carrier or carriers and the employee or employees involved in this dispute are respectively carrier and employee within the meaning of the Railway Labor Act, as approved June 21, 1934.

       This Division of the Adjustment Board has jurisdiction over the dispute involved herein.

       Parties to said dispute were given due notice of hearing thereon.

       By letter dated May 23, 2012, the Claimant was instructed to attend an Investigation with the stated purpose:

Form 1                                                          Award No. 28229
Page 2                                                          Docket No. 48108
                                                          16-1-NRAB-00001-140129

". . . to develop the facts and place your responsibility, if any, in
connection with information received on May 20, 2012, that you did not
meet the minimum availability requirements as outlined in System
Notice 108, originally issued on July 30, 2010 and any subsequent
minimum availability re-issue notices, for the period April 23, 2012
through May 20, 2012, and all circumstances relating thereto."

The formal Investigation was held on July 21, 2012.  By letter dated August 9,
2012, the Claimant was notified that the Carrier had found him guilty of violating the
CSX Transportation Absenteeism Policy, and assessed him two days overhead for a
period of six months.  The Organization filed a timely appeal, and the matter was
appealed up to and including the highest designated officer of the Carrier, whereupon
the dispute was duly submitted to the First Division for resolution.

The record reflects that the Claimant was displaced by a senior employee on
May 17, 2012 at 2249 hours (CSX time).  After three attempts, the Claimant was
notified of his displaced status on the same day at 2327 hours (CSX time).  The
Claimant did not exercise his seniority until May 19, 2012 at 1452 hours (CSX time),
although on May 18, 2012, there were three open turns available on the C1 Extra
Board, and on May 19, 2012 there were two open turns, as well as junior employees
working.  The Carrier classified the Claimant as unavailable for May 18 and 19, 2012
for minimum availability purposes, reasoning that work had been available to him but
he chose to forgo that work pending exercise of his seniority to his new assignment.
The Carrier concluded that the Claimant failed to meet the minimum availability
standard of System Notice 108 based on this determination, and asserts that the
Claimant was properly assessed a two-day overhead suspension for a period of six
months pursuant to that policy.

The Organization's objections in the instant case, as well as the Carrier's
responses, and their respective Submissions and authorities, are essentially identical to
those presented to the Board in First Division Award 28224.  Inasmuch as they have
been exhaustively set forth and addressed in detail in that Award, they are
incorporated herein by reference for the sake of brevity.  That being the case, the
Board notes that the instant case record contains substantial evidence that there were
junior employees working throughout the period of the Claimant's displacement

Form 1                                                    Award No. 28229
Page 3                                                    Docket No. 48108
                                                    16-1-NRAB-00001-140129

whose jobs the Claimant could have taken by the exercise of his seniority sooner than
he did.  Although the Claimant was displaced involuntarily, there is substantial
evidence that he remained in that status longer than necessary through his own choice.

        In sum, the Carrier presented substantial evidence to show that the Claimant
was unavailable for work on two days out of the review period and that the discipline
assessed was warranted pursuant to the minimum availability guidelines of System
Notice 108, originally issued on July 30, 2010, and Reissue Bulletin & Notice 100 dated
October 1, 2012.  For the reasons set forth in First Division Award 28224, the Board
finds that this application of the minimum availability guidelines is not barred by
Article XII of the 1996 UTU-CSXT (B&O) Agreement, or by any other Agreement
between the Carrier and the Organization.

                                    <u>AWARD</u>

        Claim denied.

                                    <u>ORDER</u>

        This Board, after consideration of the dispute identified above, hereby orders
that an Award favorable to the Claimant(s) not be made.


                            NATIONAL RAILROAD ADJUSTMENT BOARD
                                By Order of First Division


Dated at Chicago, Illinois, this 26th day of April 2016.

Form 1          NATIONAL RAILROAD ADJUSTMENT BOARD
                         FIRST DIVISION

Award No. 28230
Docket No. 48109
16-1-NRAB-00001-140130

The First Division consisted of the regular members and in addition Referee Lisa Salkovitz Kohn when award was rendered.

PARTIES TO DISPUTE:
                    (United Transportation Union
                    (
                    (CSX Transportation, Inc. (Former Baltimore &
                    (  Ohio Railroad Company

**STATEMENT OF CLAIM:**

"Reference to File number 233792. Appeal claim of Foreman, B. G. Gronau, ID XXXXXXX, for two (2) days overhead for a period of six months, that his record be cleared of the event, and he be compensated for all lost earnings including pay for attending the investigation and wage equivalent of fringe benefits, including health and welfare expenses, in accord with Rule 17 of the governing agreement."

**FINDINGS:**

The First Division of the Adjustment Board, upon the whole record and all the evidence, finds that:

The carrier or carriers and the employee or employees involved in this dispute are respectively carrier and employee within the meaning of the Railway Labor Act, as approved June 21, 1934.

This Division of the Adjustment Board has jurisdiction over the dispute involved herein.

Parties to said dispute were given due notice of hearing thereon.

By letter dated June 6, 2012, the Claimant was instructed to attend an Investigation with the stated purpose:

Form 1                                                      Award No. 28230
Page 2                                                      Docket No. 48109
                                                    16-1-NRAB-00001-140130

". . . to develop the facts and place your responsibility, if any, in
connection with information received on June 3, 2012, that you did not
meet the minimum availability requirements as outlined in System
Notice 108, originally issued on July 30, 2010 and any subsequent
minimum availability re-issue notices, for the period May 7, 2012
through June 3, 2012, and all circumstances relating thereto."

The formal Investigation was held on June 26, 2012.  By letter dated July 26,
2012, the Claimant was notified that the Carrier had found him culpable for violation
of CSX Transportation Operating Rules A, 105-A, CSX Transportation Bulletins &
Notices, as well as System Notice 108, originally issued on July 30, 2010 and Re-issue
Notice 100 effective April 1, 2012, and assessed him two days overhead for a period of
six months.  The Organization filed a timely appeal, and the matter was appealed up
to and including the highest designated officer of the Carrier, whereupon the dispute
was duly submitted to the First Division for resolution.

The record reflects that the Claimant was displaced by a senior employee on
May 15, 2012 at 0826 hours (CSX time).  After 23 attempts, the Claimant was notified
of his displaced status on May 16, 2012 at 0050 hours (CSX time).  Even though two
junior employees were working and available to bump, and there were various open
turns on the Extra Board, the Claimant did not exercise his seniority until May 17,
2012 at 0249 hours (CSX time).  During the same review period, the Claimant was
displaced on June 2, 2012 at 1632 hours (CSX time).  After 17 attempts, the Claimant
was notified of his displaced status on June 3, 2012 at 0535 hours (CSX time).
Although a junior employee was working, and there were four open turns on the extra
board, the Claimant did not exercise his seniority until June 3, 2012 at 2311 hours
(CSX time).  The Carrier classified the Claimant as unavailable for May 16 and June
3, 2012 for minimum availability purposes, reasoning that work had been available to
him but he chose to forgo that work pending the exercise of his seniority to his new
assignment.  The Carrier concluded that the Claimant failed to meet the minimum
availability standard of System Notice 108 based on this determination, and asserts
that the Claimant was properly assessed a two-day overhead suspension for a period
of six months pursuant to that Policy.

Form 1                                                                    Award No. 28230
Page 3                                                                    Docket No. 48109
                                                                          16-1-NRAB-00001-140130

      The Organization's objections in the instant case, as well as the Carrier's responses, and their respective Submissions and authorities, are essentially identical to those presented to the Board in First Division Award 28224.  Inasmuch as they have been exhaustively set forth and addressed in detail in that Award, they are incorporated herein by reference for the sake of brevity.  That being said, the Board notes that the instant case record contains substantial evidence that there were junior employees working throughout the period of the Claimant's displacement whose jobs the Claimant could have taken by the exercise of his seniority sooner than he did. Although the Claimant was displaced involuntarily, there is substantial evidence that he remained in that status longer than necessary through his own choice.

      In sum, the Carrier presented substantial evidence to show that the Claimant was unavailable for work on two days out of the review period and that the discipline was warranted pursuant to the minimum availability guidelines of System Notice 108, originally issued on July 30, 2010 and Re-issue Notice 100 effective April 1, 2012.  For the reasons set forth in First Division Award 28224, the Board finds that this application of the minimum availability guidelines is not barred by Article XII of the 1996 UTU-CSXT (B&O) Agreement, or by any other Agreement between the Carrier and the Organization.

## AWARD

      Claim denied.

## ORDER

      This Board, after consideration of the dispute identified above, hereby orders that an Award favorable to the Claimant(s) not be made.

                    NATIONAL RAILROAD ADJUSTMENT BOARD
                        By Order of First Division

Dated at Chicago, Illinois, this 26th day of April 2016.

Form 1             NATIONAL RAILROAD ADJUSTMENT BOARD
                            FIRST DIVISION

                                              Award No. 28231
                                              Docket No. 48110
                                              16-1-NRAB-00001-140131

     The First Division consisted of the regular members and in addition Referee Lisa Salkovitz Kohn when award was rendered.

                              (United Transportation Union
PARTIES TO DISPUTE:  (
                              (CSX Transportation, Inc. (Former Baltimore &
                              (  Ohio Railroad Company)

STATEMENT OF CLAIM:

     "Reference to, File number 234303. Appeal claim of Conductor, S. P. Konnerth, ID XXXXXXX, two (2) days overhead for a period of six months, that his record be cleared of the event, and he be compensated for all lost earnings including pay for attending the investigation and wage equivalent of fringe benefits, including health and welfare expenses, in accord with Rule 17 of the governing agreement."

FINDINGS:

     The First Division of the Adjustment Board, upon the whole record and all the evidence, finds that:

     The carrier or carriers and the employee or employees involved in this dispute are respectively carrier and employee within the meaning of the Railway Labor Act, as approved June 21, 1934.

     This Division of the Adjustment Board has jurisdiction over the dispute involved herein.

     Parties to said dispute were given due notice of hearing thereon.

     By letter dated June 14, 2012, the Claimant was instructed to attend an Investigation with the stated purpose:

Form 1                                                          Award No. 28231
Page 2                                                          Docket No. 48110
                                                                16-1-NRAB-00001-140131

"... to develop the facts and place your responsibility, if any, in connection with information received on June 14, 2012, that you did not meet the minimum availability requirements as outlined in System Notice 108, originally issued on July 30, 2010 and any subsequent minimum availability re-issue notices, for the period May 14, 2012 through June 10, 2012, and all circumstances relating thereto."

The formal Investigation was held on July 3, 2012.  By letter dated August 1, 2012, the Claimant was notified that the Carrier had found him culpable for violation of CSX Transportation System Bulletins & Notices 100 dated July 1, 2012 and Operating Rule GR 105-A, and assessed him two days overhead for a period of six months.  The Organization filed a timely appeal, and the matter was appealed up to and including the highest designated officer of the Carrier, whereupon the dispute was duly submitted to the First Division for resolution.

The record reflects that the Claimant was displaced by a senior employee on June 6, 2012 at 0823 hours (CSX time).  After three attempts, the Claimant was notified of his displaced status on the same day at 0939 hours (CSX time).  The Claimant exercised his seniority on June 7, 2012 at 1219 hours (CSX time), by bidding to a job that was observing two rest days.  After observing the two rest days, the Claimant was again displaced on June 8, 2012, at 0811 hours (CSX time).  After seven attempts, he was notified on June 9, 2012 at 2105 hours (CSX time). The Claimant exercised his seniority on June 10, 2012 at 2126 (CSX time).  Once again, the Claimant's exercise of seniority was to an assignment observing two rest days. On both dates junior employees were working while the Claimant was in a displaced status.  On June 6, 2012, two junior employees were working and available for bumping.  On June 10, 2012, one junior employee was working, and there were also three open turns on the BAWL C1 Extra Board.  The Carrier classified the Claimant as unavailable for June 6 and June 10, 2012 for minimum availability purposes, reasoning that work had been available to him but he chose to forgo that work pending the exercise of his seniority to his new assignment.  The Carrier concluded from this determination that the Claimant failed to meet the minimum availability standard of System Notice 108, and asserts that the Claimant was properly assessed a two-day overhead suspension for a period of six months pursuant to that Policy.

Form 1                                                      Award No. 28231
Page 3                                                     Docket No. 48110
                                                        16-1-NRAB-00001-140131

     The Organization's objections in the instant case, as well as the Carrier's responses, and their respective Submissions and authorities, are essentially identical to those presented to the Board in First Division Award 28224.  Inasmuch as they have been exhaustively set forth and addressed in detail in that Award, they are incorporated herein by reference for the sake of brevity.  That being said, the Board notes that the instant case record contains substantial evidence that there were junior employees working throughout the period of the Claimant's displacement whose jobs the Claimant could have taken by the exercise of his seniority sooner than he did.  Although the Claimant was displaced involuntarily, there is substantial evidence that he remained in that status longer than necessary through his own choice.

     In sum, the Carrier presented substantial evidence to show that the Claimant was unavailable for work on two days out of the review period and that the discipline assessed was warranted pursuant to the minimum availability guidelines of CSX Transportation System Bulletins & Notices 100 dated July 1, 2012 and Operating Rule GR 105-A.  For the reasons set forth in First Division Award 28224, the Board finds that this application of the minimum availability guidelines is not barred by Article XII of the 1996 UTU-CSXT (B&O) Agreement, or by any other Agreement between the Carrier and the Organization.


<u>AWARD</u>

     Claim denied.


<u>ORDER</u>

     This Board, after consideration of the dispute identified above, hereby orders that an Award favorable to the Claimant(s) not be made.


                    NATIONAL RAILROAD ADJUSTMENT BOARD
                      By Order of First Division


Dated at Chicago, Illinois, this 26th day of April 2016.

Form 1  NATIONAL RAILROAD ADJUSTMENT BOARD
FIRST DIVISION

Award No. 28232
Docket No. 48111
16-1-NRAB-00001-140132

The First Division consisted of the regular members and in addition Referee
Lisa Salkovitz Kohn when award was rendered.

(United Transportation Union

PARTIES TO DISPUTE:  (

(CSX Transportation, Inc. (Former Baltimore &
(  Ohio Railroad Company)

STATEMENT OF CLAIM:

"Reference to, File number 232662. Appeal claim of Conductor, B. L.
Walker, ID XXXXXXX, for two (2) days overhead for a period of six
months, that his record be cleared of the event, and he be compensated
for all lost earnings including pay for attending the investigation and
wage equivalent of fringe benefits, including health and welfare expenses,
in accord with Rule 17 of the governing agreement."

FINDINGS:

The First Division of the Adjustment Board, upon the whole record and all the
evidence, finds that:

The carrier or carriers and the employee or employees involved in this dispute
are respectively carrier and employee within the meaning of the Railway Labor Act,
as approved June 21, 1934.

This Division of the Adjustment Board has jurisdiction over the dispute
involved herein.

Parties to said dispute were given due notice of hearing thereon.

By letter dated May 25, 2012, the Claimant was instructed to attend an
Investigation with the stated purpose:

Form 1                                                        Award No. 28232
Page 2                                                        Docket No. 48111
                                                             16-1-NRAB-00001-140132

". . . to develop the facts and place your responsibility, if any, in connection with information received on May 25, 2012, that you did not meet the minimum availability requirements as outlined in System Notice 108, originally issued on July 30, 2010 and any subsequent minimum availability re-issue notices, for the period April 23, 2012 through May 20, 2012, and all circumstances relating thereto."

The formal Investigation was held on June 13, 2012.  By letter dated July 7, 2012, the Claimant was notified that the Carrier had found him culpable for violation of CSX Operating Rule 105-A, as well as CSX Transportation Bulletins & Notices, System Notices 100 and 108, originally issued on July 30, 2012 and all subsequent minimum availability reissue notices, and assessed him two days overhead for a period of six months.  The Organization filed a timely appeal, and the matter was appealed up to and including the highest designated officer of the Carrier, whereupon the dispute was duly submitted to the First Division for resolution.

The record reflects that the Claimant was displaced by a senior employee on April 21, 2012 at 0449 hours (CSX time).  After 44 attempts, the Claimant was notified of his displaced status on April 22, 2012, at 1008 hours (CSX time).  The Claimant exercised his seniority on April 24, 2012 at 0428 hours (CSX time), by bidding to a job that was observing a rest day.  The Claimant was again displaced on May 16, 2012, at 0705 hours (CSX time).  After 49 attempts, he was notified on May 17, 2012 at 0911 hours (CSX time).  The Claimant exercised his seniority on the same day as his notification.  However, he exercised his seniority to an assignment observing two rest days.  On April 23, 2012 two junior employees were working and available for bumping and there were two open turns on the CGGA C1 Extra Board.  Also, on May 17, 2012, two junior employees were working and available for bumping.  The Carrier classified the Claimant as unavailable for April 23 and May 10, 2012 for minimum availability purposes, reasoning that work had been available to him but he chose to forgo that work pending the exercise of his seniority to his new assignment.  The Carrier concluded from this determination that the Claimant failed to meet the minimum availability standard of System Notice 108, and asserts that the Claimant was properly assessed a two-day overhead suspension for a period of six months pursuant to that Policy.

Form 1                                               Award No. 28232
Page 3                                               Docket No. 48111
                                                     16-1-NRAB-00001-140132

The Organization's objections in the instant case, as well as the Carrier's responses, and their respective Submissions and authorities, are essentially identical to those presented to the Board in First Division Award 28224. Inasmuch as they have been exhaustively set forth and addressed in detail in that Award, they are incorporated herein by reference for the sake of brevity. That being said, the Board notes that the instant case record contains substantial evidence that there were junior employees working throughout the period of the Claimant's displacement whose jobs the Claimant could have taken by the exercise of his seniority sooner than he did. Although the Claimant was displaced involuntarily, there is substantial evidence that he remained in that status longer than necessary through his own choice.

In sum, the Carrier presented substantial evidence to show that the Claimant was unavailable for work on two days out of the review period and that the discipline assessed was warranted pursuant to the minimum availability guidelines of CSX Transportation Bulletins & Notices, System Notices 100 and 108, originally issued on July 30, 2012 and all subsequent minimum availability reissue notices. For the reasons set forth in First Division Award 28224, the Board finds that this application of the minimum availability guidelines is not barred by Article XII of the 1996 UTU-CSXT (B&O) Agreement, or by any other Agreement between the Carrier and the Organization.

## AWARD

Claim denied.

## ORDER

This Board, after consideration of the dispute identified above, hereby orders that an Award favorable to the Claimant(s) not be made.

NATIONAL RAILROAD ADJUSTMENT BOARD
By Order of First Division

Dated at Chicago, Illinois, this 26th day of April 2016.

Form 1            NATIONAL RAILROAD ADJUSTMENT BOARD
                            FIRST DIVISION

                                          Award No. 28233
                                          Docket No. 48112
                                          16-1-NRAB-00001-140133

        The First Division consisted of the regular members and in addition Referee
Lisa Salkovitz Kohn when award was rendered.

                              (United Transportation Union
PARTIES TO DISPUTE:  (
                              (CSX Transportation, Inc. (Former Baltimore &
                              (  Ohio Railroad Company)

STATEMENT OF CLAIM:

        "Reference to, File number 236692. Appeal claim of Conductor, J. M.
        Dean, ID XXXXXXX, for two (2) days overhead for a period of six
        months, that his record be cleared of the event, and he be compensated
        for all lost earnings including pay for attending the investigation and
        wage equivalent of fringe benefits, including health and welfare expenses,
        in accord with Rule 17 of the governing agreement."

FINDINGS:

        The First Division of the Adjustment Board, upon the whole record and all the
evidence, finds that:

        The carrier or carriers and the employee or employees involved in this dispute
are respectively carrier and employee within the meaning of the Railway Labor Act,
as approved June 21, 1934.

        This Division of the Adjustment Board has jurisdiction over the dispute
involved herein.

        Parties to said dispute were given due notice of hearing thereon.

        By letter dated July 19, 2012, the Claimant was instructed to attend an
Investigation with the stated purpose:

Form 1                                                          Award No. 28233
Page 2                                                          Docket No. 48112
                                                            16-1-NRAB-00001-140133

> ". . . to develop the facts and place your responsibility, if any, in
> connection with information received on July 19, 2012, that you did not
> meet the minimum availability requirements as outlined in System
> Notice 108, originally issued on July 30, 2010 and any subsequent
> minimum availability re-issue notices, for the period June 18, 2012
> through July 15, 2012, and all circumstances relating thereto."

The formal Investigation was held on July 26, 2012.  By letter dated August 24,
2012, the Claimant was notified that the Carrier had found him culpable for violation
of CSX Operating Rule 105-A, as well as CSX Transportation Bulletins & Notices,
System Notices 100 and 108, originally issued on July 30, 2012 and all subsequent
minimum availability reissue notices, and assessed him two days overhead for a period
of six months.  The Organization filed a timely appeal, and the matter was appealed
up to and including the highest designated officer of the Carrier, whereupon the
dispute was duly submitted to the First Division for resolution.

The record reflects that the Claimant was displaced by a senior employee on
July 7, 2012 at 0034 hours (CSX time).  After three attempts, the Claimant was
notified of his displaced status on July 9, 2012, at 0056 hours (CSX time).  The
Claimant exercised his seniority on July 10, 2012 at 1039 hours (CSX time), by bidding
to a job observing two rest days.  On July 9, 2012, two junior employees were working,
and there was an open turn on the BAWL C1 Extra Board.  The Claimant was again
displaced on July 10, 2012, at 1215 hours (CSX time).  After ten attempts, he was
notified on the same day, but exercised his seniority on July 12, 2012 at 0013 hours
(CSX time) to an assignment observing a rest day.  On July 11, 2012, two junior
employees were working and available for bumping and there was an open turn on the
BAWL C1 Extra Board.  The Carrier classified the Claimant as unavailable for July 9
and 11, 2012 for minimum availability purposes, reasoning that work had been
available to him but he chose to forgo that work pending the exercise of his seniority to
his new assignment.   The Carrier concluded from this determination that the
Claimant failed to meet the minimum availability standard of System Notice 108, and
asserts that the Claimant was properly assessed a two-day overhead suspension for a
period of six months pursuant to that Policy.

Form 1                                                          Award No. 28233
Page 3                                                          Docket No. 48112
                                                              16-1-NRAB-00001-140133

      The Organization's objections in the instant case, as well as the Carrier's responses, and their respective Submissions and authorities, are essentially identical to those presented to the Board in First Division Award 28224.  Inasmuch as they have been exhaustively set forth and addressed in detail in that Award, they are incorporated herein by reference for the sake of brevity.  That being said, the Board notes that the instant case record contains substantial evidence that there were junior employees working throughout the period of the Claimant's displacement whose jobs the Claimant could have taken by the exercise of his seniority sooner than he did.  Although the Claimant was displaced involuntarily, there is substantial evidence that he remained in that status longer than necessary through his own choice.

      In sum, the Carrier presented substantial evidence to show that the Claimant was unavailable for work on two days out of the review period and that the discipline assessed was warranted pursuant to the minimum availability guidelines of CSX Transportation Bulletins & Notices, System Notices 100 and 108, originally issued on July 30, 2012 and all subsequent minimum availability reissue notices.  For the reasons set forth in First Division Award 28224, the Board finds that this application of the minimum availability guidelines is not barred by Article XII of the 1996 UTU-CSXT (B&O) Agreement, or by any other Agreement between the Carrier and the Organization.

<u>AWARD</u>

      Claim denied.

<u>ORDER</u>

      This Board, after consideration of the dispute identified above, hereby orders that an Award favorable to the Claimant(s) not be made.

                     NATIONAL RAILROAD ADJUSTMENT BOARD
                        By Order of First Division

Dated at Chicago, Illinois, this 26th day of April 2016.