UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| INTERNATIONAL ASSOCIATION OF SHEET METAL, AIR, RAIL AND TRANSPORTATION WORKERS-TRANSPORTATION DIVISION, ET AL., | ) ) ) ) ) ) | CASE NO.1:16CV2554 |
| Petitioners, | ) ) | JUDGE CHRISTOPHER A. BOYKO |
| vs. | ) ) | |
| CSX TRANSPORTATION, INC., | ) ) | OPINION AND ORDER |
| Respondent. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Petitioners' Motion for Summary Judgment (ECF # 14) and Respondent's Motion for Summary Judgment. (ECF # 16). For the following reasons, the Court denies Petitioner's Motion and grants Respondent's Motion.

Petitioners' Petition for Review challenges the arbitration decisions of the National Railroad Adjustment Board, First Division, finding Petitioners violated the attendance policy of Respondent CSX. Petitioners seek reversal of the decision to include a clear record, compensation for lost earnings and two days of overhead.

## FACTS

Petitioners Amaziah P. Barnette, Bracken R. Burd, Justin M. Dean, Michael T. Foster, Brian G. Gronau, Jeffery A. Habel, Nicholas L. Ingrodi, Shawn P. Konnerth, David D. Lyon and Brant L. Walker are employees of Respondent CSX Transportation, Inc. ("CSXT") and

members of Petitioner International Association of Sheet Metal, Air, Rail and Transportation Workers-Transportation Division ("SMART-TD"). Under the 1996 United Transportation Union ("UTU") Collective Bargaining Agreement ( "CBA"), modifying the CBA between Baltimore & Ohio Railroad, ("B & O") to which CSXT is the successor to B & O, and SMART-TD is the successor to UTU, senior SMART-TD members may bump or "displace" lower seniority members from their positions. The B & O CBA allowed displaced workers to exercise their displacement rights or obtain a leave of absence with thirty days of displacement or they would be marked as Voluntary Unexplained Absence. (B & O Rule 8(d)(2)). Article XII of the 1996 UTU modified B & O Rule 8(d)(2), reducing the time for a displaced member to exercise his or her displacement rights from the previous thirty days to forty-eight hours. From April 21, 2012 to January 8, 2013, each individually named Petitioner was displaced from his previous work assignment by a more senior member. Each individual Petitioner timely exercised his displacement rights under Article XII of the 1996 UTU National Agreement. However, CSXT classified each Petitioner as unavailable and in violation of CSXT's attendance policy because the individual Petitioners did not make themselves available to work during the forty-eight hour displacement period. CSXT subsequently disciplined each Petitioner. SMART-TD brought claims under the relevant CBAs on behalf of the disciplined Petitioners and the issue was referred to arbitration pursuant to the Railway Labor Act 45 U.S.C. §153. After a hearing on December 9, 2015, the Board issued its decisions in Award Nos. 28224-28233, denying each claim of the individual Petitioners, finding the language of Article XII of the 1996 UTU National Agreement did not prohibit the imposition of discipline for the Petitioners' violations of CSXT's attendance

policy. Petitioners then brought this action on October 19, 2016, seeking a ruling from the Court that the Board exceeded its jurisdiction and failed to conform to the Act and that the Court enter judgment that the Board awards are null and void and without effect. Furthermore, Petitioners ask the Court to enter judgment for Petitioners.

## The 1996 UTU National Agreement

The parties agree that the Court's determination of this dispute concerns the Board's interpretation of Article XII of the 1996 UTU Agreement entitled "Displacement." Article XII reads in pertinent part:

### Section 1

(a) Where agreements that provide for the exercise of displacement rights within a shorter time period are not in effect, existing rules, excluding crew consist agreements, are amended to provide that an employee who has a displacement right on any position (including extra boards) within a terminal or within 30 miles of such employee's current reporting point, whichever is greater, must, from the time of proper notification under the applicable agreement or practice, exercise that displacement right within forty-eight (48) hours.

(b) Failure of an employee to exercise displacement rights, as provided in (a) above, will result in said employee being assigned to the applicable extra board, seniority permitting. (The applicable extra board is the extra board protecting the assignment from which displaced.)

### Section 2

This Article shall become effective June 1, 1996 and is not intended to restrict any of the existing rights of a carrier.

(ECF # 13-2 SAR0133-34).

Article XII also contains a Question and Answer section regarding the application of displacement provision. Of particular relevance to the dispute in this matter is Question 7 and its Answer, which read as follows:

3

> Q-7: Is it the intent of Article XII to impose discipline on employees who fail to exercise seniority within 48 hours?
>
> A-7: No. Section 1(b) provides that in these circumstances the employee will be assigned to the applicable extra board, seniority permitting. The employee will then be subject to existing rules and practices governing service on such extra board.

(Id at SAR0136).

## **Petitioners' Arguments**

According to Petitioners, the Board's decisions must be vacated and awards must be made in favor of Petitioners because the Board failed to confine itself to the scope of its jurisdiction and failed to comply with the RLA. Petitioners contend the Board ignored the plain language of Article XII which expressly prohibits employee discipline based on the employees failure to exercise seniority rights within the allotted forty-eight hour period. In spite of the plain language, the Board concluded that "the Carrier's minimum availability guidelines is not barred by Article XII or any other agreement." According to Petitioners, this holding expressly ignores the plain language of Article XII, placing the Board's decision outside its jurisdiction. Furthermore, according to Petitioners, the Board acknowledged that CSXT's policies cannot conflict with the CBA but then promptly ignored Article XII in its decisions.

Petitioners further contend the Board failed to comply with the RLA when it effectively rewrote the CBA by holding Article XII applies only to what happens after forty-eight hours when an employee fails to exercise seniority rights. In so concluding, the Board rewrote a provision of the CBA that can only be rewritten upon agreement by the parties to the CBA. By effectively rewriting the CBA, Petitioners argue the Board violated the RLA

4

and its decision must be vacated.

## CSX's Arguments

CSXT in opposition to Petitioners' Motion and in support of its own Motion for Summary Judgment, argues that the Board was inarguably interpreting the displacement provisions of the CBA in order to reach its decisions, therefore, the awards were within the jurisdiction of the Board and the Court's review must end. Furthermore, the Board fully complied with the requirements of the RLA by issuing final decisions on the merits of the disputes before it by interpreting the CBAs. Petitioners have failed to present any argument that the Board did not fully comply with its duties under the RLA and therefore, the awards must be upheld.

## LAW AND ANALYSIS

Rule 56(a) of the Federal Rules of Civil Procedure provides that the Court shall grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). In asserting that a material fact can or cannot be genuinely disputed, a party must support that assertion by either citing to materials contained in the record or show that the materials cited to do or do not create a genuine issue or material fact. Fed. R. Civ. Pro. 56(c)(1). In its consideration of a motion for summary judgment, the Court need only consider those materials cited in the motion. Fed. R. Civ. Pro. 56(c)(3). The trial court is not required to search the entire record to establish that a genuine issue of material fact exists. *Tucker v. Tennessee,* 539 F.3d 526, 531 (6th.Cir. 2008) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th. Cir. 1989). Further, "if a party fails to properly support an

assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the court may determine that that fact is undisputed. Fed. R. Civ. Pro. 56(e)(2).

This case arises under the Railway Labor Act, 45 U.S.C. § 151 *et seq*. The Railway Labor Act ("RLA") governs labor disputes between rail and air carriers and their employees. Disputes between the parties are submitted to arbitration which is final and binding on all parties. *Id* at 153. The RLA provides that parties dissatisfied with the arbitration decision may petition a United States district court to vacate the decision. *Id.* §§ 153, First (q). However, the district court's review is limited to three specific grounds: "(1) failure of the Adjustment Board to comply with the requirements of the Railway Labor Act; (2) failure of the Adjustment Board to conform, or confine, itself to matters within the scope of its jurisdiction; and (3) fraud or corruption." *Union Pac. R. Co. v. Sheehan*, 439 U.S. 89, 93, 99 S.Ct. 399, 58 L.Ed.2d 354 (1978), quoting 45 U.S.C. 153 First (q). "Otherwise, the court must uphold the arbitration award, even if the court believes the decision was factually erroneous." *Greene v. IPA/UPS Sys. Bd. of Adjustment*, 221 F. Supp. 3d 866, 876 (W.D. Ky. 2016).

In discussing the standard of review in arbitration award cases, the Sixth Circuit has held: "our review of an arbitration award is one of the narrowest standards of judicial review in all of American jurisprudence." *Tenn. Valley Auth. v. Tenn. Valley Trades and Labor Council*, 184 F.3d 510, 514-15 (6th Cir. 1999) (quotations omitted).

The standard of review on a motion to vacate an arbitration award was set forth by the Sixth Circuit in *Michigan Family Res., Inc., v. Serv. Employees Int'l Union Local 517M*, 475 F.3d 746, 753 (6th Cir. 2007). There, it held a reviewing court must consider the following

6

three questions:[1] [d]id the arbitrator act "outside his authority" by resolving a dispute not committed to arbitration? [2] [d]id the arbitrator commit fraud, have a conflict of interest or otherwise act dishonestly in issuing the award? And[,] [3] in resolving any legal or factual disputes in the case, was the arbitrator "arguably construing or applying the contract"? *Id.* The Sixth Circuit went on to say, "[s]o long as the arbitrator does not offend any of these requirements, the request for judicial intervention should be resisted even though the arbitrator made 'serious,' 'improvident' or 'silly' errors in resolving the merits of the dispute." *Id.* "[A]n arbitrator does not exceed his authority every time he makes an interpretive error; he exceeds that authority only when the collective bargaining agreement does not commit the dispute to arbitration." *Id.* at 756. In concluding its survey of the applicable standard of review on a motion to vacate an arbitration award, the Sixth Circuit stated:

> This view of the "arguably construing" inquiry . . . *is a view that respects the parties' decision to hire their own judge to resolve their disputes, a view that respects the finality clause in most arbitration agreements.* . . ([*e.g.*,] stating that "the arbitrator shall have full authority to render a decision which shall be final and binding upon both parties"), and a view whose imperfections can be remedied by selecting better arbitrators.

*Id.* at 753-54 (emphasis added).

In *Bhd. of Locomotive Engineers & Trainmen v. United Transp. Union*, 700 F.3d 891, 900 (6th Cir. 2012) another case involving the UTU, the Sixth Circuit discussed the role of the district court in reviewing challenges to arbitration awards.

> The Supreme Court recognized that the federal policy "to promote industrial stabilization through the [CBA]," *id.* at 578, 80 S.Ct. 1347, "would be undermined if courts had the final say on the merits of [arbitration] awards," *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 596, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). The "proper approach," therefore,

7

is for courts to refuse to review the merits of an arbitration award. *Id.* "The courts ... have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim." *United Steelworkers of Am. v. Am. Mfg. Co.,* 363 U.S. 564, 568, 80 S.Ct. 1363, 4 L.Ed.2d 1432 (1960) (footnote omitted). Their role is only "to ascertain[ ] whether the party seeking arbitration is making a claim which on its face is governed by the contract." *Id.*

As a practical matter, such limited review respects the intent of the parties who specifically bargained for "[the arbitrator's] judgment and all that it connotes." *Id.* Still, an arbitrator's authority has limits. He is "confined to interpretation and application of the [CBA]," and he exceeds the scope of his authority when he "dispense[s] his own brand of industrial justice." *Enterprise Wheel,* 363 U.S. at 597, 80 S.Ct. 1358. In the final analysis, his judgment must not be disturbed "so long as it draws its essence from the [CBA]." *Id.*

It is against this backdrop of jurisprudence that the Court turns to the arguments at hand.

**<u>Lack of Jurisdiction</u>**

Having reviewed the Complaint, Motions, briefs, supporting materials and the arbitration record, the Court, in applying the narrow standard of review, holds the Board was acting within its jurisdiction in rendering its decisions and complied with the RLA in doing so. Petitioners' primary argument is that the Board lacked jurisdiction to render its decision as it ignored the plain language of the CBA and effectively rewrote the Agreement. This Court, however, finds that the Board was unquestionably interpreting the relevant CBAs. The Board's decision is replete with references to and interpretations of Article XII Sections 1 & 2.

The parties agree that the dispute over Article XII's interpretation was subject to arbitration under the RLA and neither side argues there was fraud or corruption by the Board

in rendering its decision, nor has anyone alleged a conflict of interest.

In its decisions[1] the Board held, "The Carrier has established that there was substantial evidence to support its determination of the Claimant's culpability under its Availability Policy, that this application of the Availability Policy does not violate the Parties' Agreement, and that the quantum of discipline assessed is appropriate under all the circumstances." Award No 22824 pg 14. The Board first determined that the Carrier's Availability Rules could not conflict with the law or with the CBA. *Id.* It then considered applicable prior award decisions concerning displacement time relative to attendance policies. The Board then expressly considered the language of Article XII. Engaging in clear consideration and interpretation of Article XII, the Board held,

> We see Section 1(a) of Article XII does not merely create or modify a right; it imposes an obligation on 'an employee who has displacement right...' That employee "must*,* from the time of proper notification under the applicable agreement or practice, exercise that displacement right within forty-eight (48) hours." Section 1(b) then provides that if the employee fails to exercise that displacement right within 48 hours, the employee will be assigned to the applicable extra board, seniority permitting. ***Thus, Section 1 of Article XII addresses only what happens after 48 hours if the employee has failed to exercise seniority to his next assignment during that time. Section 1 says nothing about the implications of delaying his selection, and thereby making himself unavailable, while work is otherwise available to him.*** (Emphasis added).

The Board then cited Section 2 of Article XII, finding the plain language of that Section demonstrated the intent of the parties that nothing in Article XII would restrict the Carrier's rights under its Attendance policies.

---

[1] The Board wrote in depth in the Award No. 28224, claim of Jeffrey A. Habel, and applied its reasoning therein to the other similarly situated Petitioner award decisions. Therefore, the Court looked to the reasoning in Habel's award to address the Boards decisions as applied to the other Petitioners.

9

> ***Indeed, as the Carrier observes, Section 2 of Article XII states that the Article "is not intended to restrict any of the existing rights of a carrier," and thus the new procedure of Section 1 did not reduce the Carrier's long-standing right to discipline employees who fail to maintain appropriate attendance levels.*** (Highlight added).

Id. at 16.

The Board then considered Petitioners' argument that the Q & A Section at number 7 clearly expresses the intent of the parties that employees who failed to exercise displacement rights within the forty-eight hour time frame of Article XII would not be disciplined. Petitioners, in reliance on the Answer to Question 7 that no discipline would follow the exercise of their displacement rights *outside* the forty-eight hour time period, argues that it necessarily follows that no employee would be disciplined for exercising their displacement rights *within* the forty-eight hour period as Petitioners had done.

In rejecting this argument the Board determined Petitioners' interpretation of Article XII and Q& A 7 "goes too far." The Board reasoned that from the history of Article XII and the change in the time period for exercising displacement rights, the parties were concerned with the effect of the greatly reduced time to exercise displacement rights between the thirty day period of the prior CBA to the forty-eight hour period in the 1996 UTU. The Board held that Petitioners failed to demonstrate that Article XII was intended to immunize employees from discipline for attendance policy violations. This is especially true as the Board pointed out by the plain language of Section 2 preserving the Carrier's existing rights, which include the right to enforce its attendance policies.

These excerpts from the Board's award demonstrate that the Board's decision was based on its construing and interpreting the relevant CBA sections. The Board examined Petitioners' arguments and, in rejecting them, relied on the language of Article XII. The

Board specifically found that the language of Article XII at Section 1 was silent as to discipline when a displaced worker makes himself unavailable when work is available. The Board also relied on the plain language of Section 2 of Article XII wherein it reads that Article XII is not intended to restrict any existing rights of the Carrier. The Board discussed Rule 8 of the B & O CBA and the history behind the shortening of the time for displaced workers to exercise their seniority rights. The Board also reviewed the Q & A statements, finding they only addressed what happens when a displaced worker fails to exercise his rights with the forty-eight hour period. The Board further considered other provisions of the relevant CBAs, finding they either were inapplicable to the displacement rights issue, or did not restrict the rights of the Carrier to enforce its attendance policies. In considering all these provisions, the Board examined the language of the CBAs and reached its award decision based on a logical interpretation of them. Even if the Court disagreed with that interpretation, it is insufficient to vacate the Board's decision. "Unless the arbitrator's logic was 'wholly baseless and without foundation and reason,' this Court may not disturb the Award." *Greene v. IPA/UPS Sys. Bd. of Adjustment*, 221 F. Supp. 3d 866, 881 (W.D. Ky. 2016) quoting *Schneider v. S. Ry. Co.*, 822 F.2d 22, 24 (6th Cir. 1987).

This Court finds the Board's decision was based on its arguably construing and interpreting the CBAs and its conclusions were based on a logical interpretation therefrom. Therefore, because the Board's decisions "drew its essence from the CBA," its decisions are upheld under the Court's narrow review.

**Failure to apply the RLA**

Petitioners argue that by ignoring the plain and unambiguous language of the relevant

CBAs the Board failed to comply with the RLA by effectively rewriting the CBA. Having determined that the Board's decision drew its essence from the CBAs, this argument also must fail for the same reasons. Furthermore, as CSXT argues in reliance on *Greene*, "courts rarely vacate RLA arbitrations" for failure to comply with the RLA. "When they do, it is typically because the adjustment board in question failed to decide the merits of a case when the RLA required it to do so." *Greene*, 221 F. Supp. 3d at 879. Petitioners do not cite the Court to any provision of the RLA that the Board failed to comply with other than Petitioners' generalized arguments that the Boards failed to apply the plain language of the CBAs to the dispute at hand. Here, the record is clear that the Board issued its awards based on the merits of the claims. Therefore, the Court finds the Board complied with the requirements of the RLA.

Therefore, for the foregoing reasons, the Court grants CSXT's Motion for Summary Judgment and upholds the Board's decisions against Petitioners. The Court denies Petitioners' Motion for Summary Judgment.

IT IS SO ORDERED.

                                         s/ Christopher A. Boyko
                                         CHRISTOPHER A. BOYKO
                                         United States District Judge

Dated: March 12, 2018